UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JUNE M. SIMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NSTAR GAS & ELECTRIC and )<br>DEDHAM HOUSING AUTHORITY, )<br>)<br>Defendants. ) | C.A. No. 04-11485-RCL |

### MEMORANDUM AND ORDER

LINDSAY, District Judge

Before the Court is a complaint filed by plaintiff June M. Siman, proceeding *pro se*, in which she alleges that NStar Gas & Electric ("NStar") wrongly terminated Siman's gas service and that the Dedham Housing Authority (the "DHA") discriminated against her on the basis of her disability. Siman also requests that I appoint an attorney for her. For the reasons stated below, the court dismisses NStar as a defendant, directs Siman to show good cause, within thirty-five days of the date of this order, why her complaint should not be dismissed, and denies without prejudice the plaintiff's request for an attorney.

### BACKGROUND

On June 29, 2004, Siman filed this action, alleging, generally, that (1) NStar improperly terminated her utility services and made gross miscalculations in her bill based on its failure to take actual readings of her gas meter and to consider Siman's health; and (2) the DHA is improperly terminating her participation in the federally-funding Section 8 voucher low-income housing program

because of her failure to pay her utility bills. Siman alleges that she is a "single mother with long standing disabilities." Compl. ¶ 2. She has not identified the nature of her disabilities, but the chronology in her complaint indicates that she had a period of hospitalization within the time period relevant to the complaint.

Siman chronicles her alleged attempts to resolve the arrears on her utility bills. She claims that NStar consistently failed to take a reading of her gas meter, resulting in overcharges on her gas bill. She maintains that because of these overcharges, her gas bill has been in dispute since August 27, 2003. On June 23, 2004, NStar allegedly shut off Siman's gas service. Siman maintains that this action was improper because NStar cannot terminate a customer's gas service for non-payment of disputed charges, and because a recent reading of her gas meter by an NStar employee corroborates Siman's claims that NStar has grossly overestimated Siman's gas usage.

Siman also alleges that, by terminating her gas service, NStar failed to comply with state and federal regulations concerning the delivery of utilities to customers suffering from serious illnesses. Siman also maintains that NStar's termination of Siman's electric services on September 16, 2003 (later restored) and in May 2004 (also later restored), and NStar's warning that it would terminate electricity service to Siman on July 14, 2004, also violated these regulations. Siman allegedly tried to resolve these issue not only by communicating with NStar but also by writing a letter to the Massachusetts Department of Telecommunications and Energy (the "DTE") in September 2003. The DTE allegedly never replied to Siman's letter.

Siman claims that the conduct of NStar threatens her eligibility for participation in the Section 8 voucher program. In a letter dated June 14, 2004, but allegedly postmarked June 15, 2004, the DHA

informed Siman that the DHA had learned that Siman had a large outstanding balance owed for electricity, and that Siman's failure to pay for the electricity was a breach of her lease and could result in the termination of her participation in the Section 8 voucher program. The letter stated that Simon could contest the information the DHA has received by submitting a written request to the DHA within five working days of receiving the letter for an informal hearing. The purpose of such an informal hearing would be to make a final determination on the eligibility of Siman to receive housing assistance. In a hand-written letter to the DHA dated June 21, 2004, Siman requested an informal hearing concerning the possible termination of her participation in the Section 8 voucher program. Siman maintains that she has not received a reply from the DHA concerning her request for an informal hearing.

Siman seeks injunctive relief and has not requested damages. She asks that: (1) the court order that NStar "abide by the Federal and State Rules governing both serious illness protection and the process of disputing Gas usage"; (2) the DTE "investigate her situation"; and (3) the DHA not "cause plaintiff to be homeless because she has availed herself of the laws that govern utility shut-off protection." *Id.* ¶ 16. Siman also requests that the court appoint an attorney, "whether through the Americans with Disabilities Act Trial Court Division or other means." *Id.* ¶ 17.[1]

---

[1] Siman also moved to proceed without prepayment of the $150.00 filing fee. The court granted this motion on November 18, 2004.

**DISCUSSION**

I.   **The Authority of the Court to Screen the Complaint**

Because Siman has filed her complaint without prepayment of the filing fee, summonses have not issued in order to allow the Court to review the complaint to determine whether it satisfies the requirements of the federal *in forma pauperis* statute. *See* 28 U.S.C. § 1915. Section 1915 of title 28 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 325 (1989) (interpreting former § 1915(d)), or if the action fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2). *In forma pauperis* complaints may be dismissed *sua sponte* and without notice under Section 1915 if the claim is based on an indisputably meritless legal theory or factual allegations that are clearly baseless. *Id.*; *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (interpreting former § 1915(d)).

II.   **Claims Against NStar[2]**

Siman has not stated a claim against NStar. It is true that state regulations require that utility companies take meter readings every other month (unless the customer or unusual circumstances prevent an actual reading). 220 C.M.R. 220 § 25.02(2). Regulations also prevent the termination of utility services to customers who are "seriously ill" or in "financial hardship." 220 C.M.R. § 25.03(1). Nonetheless, claims for alleged violations of these regulations must be adjudicated by the DTE under

---

[2]Because Siman's claims against the FHA raises a federal question, I consider her state law claims against NStar on the basis of supplemental jurisdiction. *See* 28 U.S.C. § 1367.

the procedures set forth in 220 C.M.R. § 25.02(4) and M.G.L. ch. 30A before a court can exercise jurisdiction over these claims. M.G.L. ch. 30A, § 14; *J. & J. Enters., Inc. v. Martignetti*, 369 Mass. 535, 539-40 (1976); *Boston Edison Co. v. Brookline Realty & Inv. Corp.*, 10 Mass. App. Ct. 63, 66-67 (1980). Because Siman has not exhausted her administrative remedies, as required by law, she has not stated a claim against NStar upon which relief may be granted. Moreover, it appears that, under M.G.L. ch. 30A, § 14, after exhausting her administrative remedies, Siman would bring an action *against the DTE* asking that the court overturn the agency's decision. The DTE, an "arm" of the state of Massachusetts, enjoys Eleventh Amendment immunity from suit in federal court. *See, e.g.*, *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Alabama v. Pugh*, 438 U.S. 781, 781 (1978) (per curiam). I therefore order that NStar be dismissed as a defendant in this action.

### III.     Claims Against the DHA

The Fair Housing Act, 42 U.S.C. § 3601 *et seq.* (the "FHA") prohibits discrimination in the sale or rental of housing as well a proscribing other practices related to the provision of housing. Under the FHA, it is unlawful "[t]o discriminate in the sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of ... that person." 42 U.S.C. § 3604(f)(2). Such discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B). An "aggrieved person" - - *i.e.*, a person who "claims to have been injured by a discriminatory housing practice" or a person who "believes" that she "will be injured by a discriminatory housing practice that is about to occur," 42 U.S.C. § 3602(i) - - may commence an action in federal or state court to obtain relief with

respect to the discriminatory housing practices without having first exhausted her administrative remedies.  42 U.S.C. § 3613(a)(1).

Siman has not alleged facts from which I may infer that the DHA discriminated against her on the basis of handicap.  Significantly, Siman has not alleged facts suggesting that she is an an "aggrieved person" within the meaning of 42 U.S.C. § 3602(i).  The DHA's conduct in sending Siman a letter alerting her to the fact that it might terminate Siman's participation in the Section 8 voucher program because she failed to pay her electricity bills cannot, on the facts alleged, be construed as a discriminatory housing practice.  Moreover, in light of the fact that Siman filed her action only eight days after requesting an informal hearing and before she had received a response from the DHA, it is not reasonable to infer that discriminatory conduct by the DHA was or is "about to occur."  *Id.*[3]

Conceivably, the DHA could have violated Siman's rights if it had refused an informal hearing *on the basis of her handicap*, or if it had terminated Siman's participation in the program where it would have been reasonable accommodation of Siman's handicap to delay the termination until Siman could pursue an action against NStar.  Siman, however, has not alleged that such events occurred.

Nonetheless, because five months have passed since Siman filed her action, events may have since transpired that allow her to state a claim against the DHA.  I will thus give Siman thirty-five (35) days from the date of this order to show cause why her complaint should not be dismissed.  If Siman

---

[3]Further, Siman has not identified the handicap on which the DHA allegedly discriminated against her.  Under the FHA, a handicap is defined as "(1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment."  42 U.S.C. § 3602(h).  If Siman chooses to prosecute this case, she must specify the nature of her handicap.

fails to show good cause within this time period, the court will dismiss her lawsuit.

### IV.  Motion for Appointment of Counsel

Under the FHA, the court may appoint counsel for an "aggrieved person." 42 U.S.C. § 3613(b)(1). Similarly, under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person unable to afford counsel." *Id.* A civil plaintiff, however, lacks a constitutional right to free counsel. *DesRosiers v. Moran*, 949 F.2d 15, 23 (1st Cir. 1991). In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that the denial of counsel will result in fundamental unfairness impinging on the party's due process rights. *Id.* To determine whether there are exceptional circumstances sufficient to warrant the appointment of counsel, a court must examine the totality of the situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent himself. *Id.* at 24 (citations omitted).

As explained above, Siman has not stated claims against either of the named defendants and her complaint appears ripe for dismissal. Further, because Siman's complaint is subject to screening, as authorized by 28 U.S.C. § 1915, it has not yet been served on the defendants and the defendants have thus not filed answers or other responsive pleadings to the complaint. Consequently, I cannot determine, at this time, whether Siman has meritorious claims or, even if her claims appeared to be meritorious, whether there are exceptional circumstances sufficient to warrant appointment of counsel. I therefore deny the motion for counsel without prejudice to its refiling if the plaintiff shows good cause why her cause should not be dismissed and after the DHA has filed an answer or other responsive pleading to the complaint.

**CONCLUSION**

ACCORDINGLY, the court (1) dismisses NStar as a defendant in this action; (2) directs Siman to show good cause, within thirty-five (35) days from the date of this order, why her complaint should not be dismissed; and (3) denies without prejudice Siman's request that the court appoint an attorney for her.

SO ORDERED.

Dated at Boston, Massachusetts, this ___ day of _____, 2004.

                                                                        _____
                                                                        Reginald C. Lindsay
                                                                        United States District Judge